## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**WILLIAM PATRICK MITCHELL, et al.,**<br><br>**Defendants.** | **Case No. 1:21-cr-00090-SAG** |

**Kacher's Memorandum In Reply To ECF 63,**
**"Government's Omnibus Response To Defense Motions"**

### Table of Contents

1.  Misjoinder Is Determined By Examining The Allegations In The Indictment Alone; As The Indictment Fails To Allege The Embezzlement Crimes Are In The Same Series Of Acts Or Transactions As The Bribery Crimes, They May Not Be Joined ……. 1

2.  The Government's Proffer Does Not Show Joinder Is Permitted By Rule 8(b) …..…..... 3

3.  The Government Misunderstands And Never Comes To Grips With Kacher's Argument To Sever Counts And To Strike Indictment Overt Acts ¶ 36a-f ...........…..… 6

4.  Mitchell's Statement To FBI Agents, Offered To Prove The Truth Of A Matter Impliedly (But Not Expressly) Asserted ("Implied Assertion"), Is Hearsay …..……... 7

5.  Mitchell's Statement to FBI Agents Was An Act of Concealment Made To Cover Up, And Was Not Made During And In Furtherance Of, Any Conspiracy  ………………. 12

6.  Mitchell's False Exculpatory Statement, On Its Face, Implicates Kacher, And Under *Bruton*, Is Not Admissible In A Joint Mitchell/Kacher Trial, Even With A Limiting Instruction …………………………………………………………….………... 15

7.  Correction of Citation Error In Kacher's Opening Memorandum (ECF 59, p. 23) ...…. 18

8.  Kacher Is Aggrieved As The Government Has Imaged But Won't Return Devices ….. 18

9.  Counter-Proposal to Government's Trial Proposal-Trial Of Kacher Alone To Start On October 2, 2023 Or As Soon Thereafter As Schedules Permit …………….........… 18

     **Conclusion** (including request for a hearing) ……………………………………….... 20

This memorandum is submitted by defendant Wayne I. Kacher, Jr. ("Kacher") in reply to ECF 63, "Government's Omnibus Response To Defense Motions" ("Gov't Resp.").

1.    Misjoinder Is Determined By Examining The Allegations In The Indictment Alone; As The Indictment Fails To Allege The Embezzlement Crimes Are In The Same Series Of Acts Or Transactions As The Bribery Crimes, They May Not Be Joined

The government, in contending that there was no misjoinder of Counts 21-23 (alleging embezzlement/theft by Mitchell of MdBC funds), with Counts 1-20 (alleging bribery of Mitchell by Kacher), argues that "Joinder is appropriate under Rule 8(a) and (b) because the bribery and theft charges are part of a single scheme whereby Mitchell used his position to personally enrich himself using MdBC funds."  Gov't Resp. at 5.  But the indictment contains no such allegation (or anything similar), and since joinder is assessed by examining the allegations in the indictment alone, joinder is not permissible.

Fed. R. Crim. P. 8(b) provides, in pertinent part, "Joinder of Defendants.  The indictment or information may charge 2 or more defendants **if they are alleged** to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense."

The Fourth Circuit has noted that there is a circuit split on whether "compliance with Rule 8 is assessed by examining the allegations in the indictment alone" or whether "the district court may consider governmental proffers showing propriety of joinder."  *United States v. Cardwell*, 433 F.3d 378, 385 n. 1 (4th Cir. 2005) (citing cases).  In the cases cited in *Cardwell*, five circuits consider only the indictment, while two circuits also consider government proffers. *See id*.  In *United States v. Kennon*, Crim. No. 3:08CR42 (W.D.N.C. 2009) the Court ruled that "In the absence of specific direction by the Fourth Circuit and in consideration of the great weight of authority from other circuits, this court has determined that compliance with Rule 8 should be determined by examining the indictment only."

1

Here, the indictment contains no allegation that the crimes in the embezzlement/theft counts are "in the same series of acts or transactions" as the crimes in the bribery counts, or even that they are part of a single scheme.  On the contrary, the indictment identifies the bribery crimes and the embezzlement/theft crimes as discrete and unrelated.  Indictment Count 1, ¶ 29a alleges a conspiracy to commit honest services fraud, which, under *Skilling v. United States*, 561 U.S. 358, 412 (2010), is limited to offenders who, in violation of a fiduciary duty, participate in bribery or kickback schemes.  Indictment Count 1, ¶ 29b alleges a conspiracy to violate only the subsections of 18 U.S.C. § 666 that prohibit bribery/kickbacks, *i.e.*, §§ 666(a)(1)(B); 666(a)(2).[1] Count 1 does not allege conspiracy to violate the embezzlement/theft subsection, § 666(a)(1)(A). The remaining headings in the indictment all distinguish between bribery charges and embezzlement/theft charges.  *Compare* Indictment, Counts 2 & 3-7 ("Honest Services Wire Fraud"); Counts 8-14 & 15-20 ("Bribery concerning programs receiving federal funds"); *with id.*, Counts 21-23 ("Embezzlement Concerning Programs Receiving Federal Funds").

The government cites *United States v. Mandel*, 415 F. Supp. 1033 (D. Md. 1976) (Gov't Resp. at 4), but there, the court held joinder permissible where <u>the indictment itself</u> charged a single scheme to defraud with two parts, each involving bribery of Governor Mandel.  *Id*. at 1046; *see also id*. at 1047 ("the indictment does allege one scheme").

Since there is no allegation in the indictment that the embezzlement/theft crimes (Counts 21-23) are in the same series of acts or transactions as the bribery crimes (Counts 1-20), inclusion of Counts 21-23 in the indictment constitutes misjoinder under Rule 8(b).

---

[1] Indictment Count 1, captioned "Conspiracy to Commit Offenses Against the United States," alleges in ¶ 29b that Mitchell "did corruptly solicit, demand, accept and agree to accept a thing of value, intending to be influenced and rewarded" and that Kacher "corruptly gave, offered, and agreed to give a thing of value to Mitchell with the intent to influence and reward."  These allegations are paraphrases of 18 U.S.C. §§ 666(a)(1)(B) and 666(a)(2).

2.      The Government's Proffer Does Not Show Joinder Is Permitted By Rule 8(b)

Even were the Court to consider the government's proffer in assessing whether joinder is

permissible, *see Cardwell*, 433 F.3d at 385 n. 1, that proffer fails to show that the embezzlement/

theft crimes are "in the same series of acts or transactions" as the bribery crimes.

In *United States v. Haney*, 914 F.2d 602 (4th Cir. 1990) the Court "defined the level of

relatedness required to satisfy Rule 8(b)'s requirements," as follows:

> "Separate acts constituting separate offenses are sufficiently related to be within the same
> series if they arise out of a common plan or scheme."  *United States v. Porter*, 821 F.2d
> 968, 972 (4th Cir. 1987).  "There must be a series of acts unified by some substantial
> identity of facts or participants."  *Id*.  "We have defined 'transaction' flexibly, as
> `implying a connection or logical relationship rather than immediateness.'" [citation
> omitted]

*Haney*, 914 F.2d at 606; *see id*. (common plan or scheme shown where "two bank robberies, and

the participants, were sufficiently related").

In *United States v. Shellef*, 507 F.3d 82 (2d Cir. 2007) the Court assessed whether joinder

of certain 1996 Tax Counts was permitted as to Shellef under Rule 8(a) as being "connected with

or constitute parts of a common scheme or plan," and also, whether joinder was permitted as to

Rubenstein under Rule 8(b) because the defendants "participated . . . in the same series of acts or

transactions."  *Id*. at 97.  The Court described these two provisions as "parallel," *id*. at 97, and

applied the same test to each, *compare* 507 F.3d at 100 *with* 507 F.3d at 103,[2] asking whether

"one of the offenses depends upon or necessarily leads to the commission of the other, or if proof

of one act constitutes or depends upon proof of the other."  *Id*. at 100.  The Court held that

joinder was not permissible under Rule 8(a) as to Shellef or under Rule 8(b) as to Rubenstein.

---

[2] Moore's treatise agrees, that under Rule 8, the test of offenses "connected with or constituting
parts of a common scheme or plan" under subdivision (a) **is equivalent to** 'the same series of
acts or transactions' under subdivision (b)."  24 Moore's Federal Practice, Criminal Procedure
§ 608.03[2] (emphasis added).

Here, the government cites no evidence of Kacher participating in the embezzlement/theft crimes, and in its example of an embezzlement transaction - the Costa Rican vacation, it acknowledged that "Kacher did not participate."  Gov't Resp. at 6.  The government points to no examples where an instance of bribery was connected to an embezzlement.  In *Mackins*, the Court recognized that "It is of course possible to hypothesize" a connection between the counterfeiting and money laundering offenses, but no such connection was established.  315 F.3d at 413.  Here, similarly, it may be possible to hypothesize a connection between the bribery and embezzlement crimes, but the government does not point to evidence establishing one.

The government adds "The bribery charges cover 2014 to 2018 and the theft charges cover April 2016 to April 2019," Gov't Resp. at 5, and concludes that "When the facts underlying the bribery and theft charges are overlaid, they show an indistinguishable flurry of unjust enrichment whereby Mitchell unlawfully obtained MdBC funds either directly or through a kickback."  Gov't Resp. at 6.  While embezzlement and bribery crimes may have overlapped in time ("overlaid," per the government, Gov't Resp. at 6), a "flurry" of crimes overlapping in time is not a basis for joinder.  *See United States v. Sarkisian*, 197 F.3d 966, 976 (9th Cir. 1999) (error to join extortion charge with counts alleging trafficking in stolen cars and auto parts; "only meaningful connections" between the two counts "are that some of the same defendants were charged in both counts, and the extortion incident occurred while the car scheme was ongoing.")

The government says transactions in counts 21-23 are "dubbed theft," those in counts 1-20 are "dubbed a kickback," but "in both cases Mitchell enriched himself with MdBC funds. The kickbacks are an indirect form of theft."  Gov't Resp. at 5.  From this, in support of joinder, the government says: "given these similarities, the theft payments would be admissible evidence under Rule 404(b) in any bribery trial."  Gov't Resp. at 6.  A crime "of the same or similar

character" as a charged crime may be admissible under Rule 404(b) and also meet the joinder

test of Rule 8(a), but that is not sufficient for it to be joined under Rule 8(b).  *United States v.*

*Satterfield*, 548 F.2d 1341, 1346 (9th Cir. 1977) ("Where the prosecution introduces evidence of

prior crimes to show motive or like matters, the test of admissibility is frequently whether the

prior offenses are similar to those charged.  . . . while such similarity permits joinder under rule

8(a), it is simply not sufficient for joinder under rule 8(b).").

Here, there is no connection or logical relationship between the embezzlement/theft

crimes and the bribery crimes.  No common scheme or plan unites them.  Rule 8(b) permits

joinder if "2 or more defendants" "participated in the same act or transaction or the same series

of acts or transactions."  Only one defendant, Mitchell, participated in the embezzlement crimes.

Neither Mitchell's embezzlement crimes, nor the bribery crimes, depend upon or necessarily lead

to commission of the other.  Proof of bribery does not constitute or depend upon proof of

embezzlement, and proof of embezzlement does not constitute or depend upon proof of bribery.

Joinder of unrelated charges creates a possibility "a defendant will be convicted based on

considerations other than the facts of the charged offense."  *United States v. Cardwell*, 433 F.3d

378, 385 (4th Cir. 2005).  That "Mitchell's theft was comprised of more than 600 transactions

from 2010 to 2018," Gov't Resp. at 6, creates a further risk.  Where one defendant is charged

with offenses in which the co-defendant did not participate, "the detailed evidence introduced to

establish guilt of the separate offenses may shift the focus of the trial to the crimes of the single

defendant, giving rise to 'a high risk of being found guilty merely by association.'" *United States

v. Sarkisian*, 197 F.3d 966, 977 (9th Cir. 1999) (quoting *Satterfield*, 548 F.2d at 1346).

The government presses for joinder because severance "would unfairly tax the judicial

system," Gov't Resp. at 9, but as noted in *Mackins*, joinder of unrelated charges offers "minimal

advantages in terms of judicial efficiency." 315 F.3d at 413 n. 7. Where offenses arise out of separate, unrelated transactions, there is "little saving in time and money in having a single trial." *Id*. (quoting 1A Charles Alan Wright, Federal Practice and Procedure § 143 (3d ed.1999)).

      3.     The Government Misunderstands And Never Comes To Grips With Kacher's Argument To Sever Counts And To Strike Indictment Overt Acts ¶ 36a-f

The government misunderstands and never comes to grips with Kacher's argument to sever Counts 2, 8 and so much of Count 1 as charges a conspiracy furthered by overt acts committed in 2014, and to strike overt acts in Indictment ¶ 36a-f. *See* Gov't Resp. at 2, 11-14. The government overlooks that Indictment ¶ 32a-s, which Kacher ***has <u>not</u> moved to strike***, contains a lengthy recitation of pertinent 2014 events and payments. Indeed, ¶ 36a-f lists overt acts that, when compared to ¶ 32a-s, are a condensed statement of the same acts.

Since Kacher has <u>not</u> moved to strike Indictment ¶ 32a-s, the government is mistaken when it says Kacher's motion is "to sever and strike the 2014 bribe payments." Gov't Resp. at 2. The government may offer evidence of the payments per Indictment ¶ 32a-s as substantive evidence of the charged conspiracy, even after the Court severs counts 2 and 8 and strikes ¶ 36a-f. But labeling acts as overt acts that are time-barred as to Kacher (but not Mitchell), can lead to juror confusion, since the jury will be instructed that the government must prove an overt act.

In *United States v. Wharton*, Crim. No. ELH-13-0043 (D. Md. 2014) the court declined to strike overt acts "that occurred outside of limitations," as "such conduct is pertinent to the continuing offenses at issue, and the instructions to the jury will certainly resolve any potential for confusion." Here, unlike *Wharton*, the "conduct pertinent to the continuing offense at issue" will be before the jury via ¶ 32a-s. In that sense, ¶ 36a-f is unnecessary, as it is redundant of ¶ 32a-s. Furthermore, again unlike *Wharton*, instructions are unlikely to be able to "resolve any potential for confusion" because the statute of limitations is different for the two co-defendants,

risking that jurors may rely on 2014 overt acts (time barred as to Kacher) to convict Mitchell and then use the evidence of Mitchell's guilt against Kacher, notwithstanding a limiting instruction.

It seems probable the jury would be unable to ignore that "it takes two to tango," or to follow an instruction that tells them to ignore it. *Cf. See United States v. Ince*, 21 F.3d 576, 584 (4th Cir. 1994) ("Although we recognize the presumption of cure by a court's instruction, it seems probable here that the jury was unable to follow the instruction on impeachment by prior inconsistent statement, much less to realize that it pertained to Stevens's testimony. *See Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (Jackson, J., concurring) ('The naive assumption that prejudicial effects can be overcome by instructions to the jury, ... all practicing lawyers know to be unmitigated fiction.'")  The danger is "spillover prejudice," *cf. United States v. Tucker*, 12 F.4th 804, 825 (D.C. Cir. 2021) ("spillover prejudice, namely the risk the jury would use evidence of one defendant's guilt against another"), one only severance can mitigate.

*United States v. Head*, 641 F.2d 174 (4th Cir. 1981) holds a defendant is "entitled to an instruction requiring the jury to find an overt act committed within the limitations period." *Id*. at 177.  The overt act must be pled in the indictment.  *Id*. at 178 n. 5.  Failure to sever time-barred counts 2 and 8 and to strike overt acts ¶ 36a-f will only lead to juror confusion.

    4       Mitchell's Statement To FBI Agents, Offered To Prove The Truth Of A Matter Impliedly (But Not Expressly) Asserted ("Implied Assertion"), Is Hearsay

Kacher's motion to strike Mitchell's hearsay statement to FBI SA Goshen relied on *Lyle v. Koehler*, 720 F.2d 426, 433 (6th Cir. 1983) (letters reflecting co-defendant's attempt to arrange false alibi were hearsay; they "were introduced because by inference they assert the proposition of fact that Kemp and Lyle committed the robbery and hence need an alibi").

The government does not attempt to address *Lyle* on the merits, and instead, suggests it is a one-off case that has not been followed elsewhere.  Gov't Resp. at 15-16.

But *Lyle* is in a category of cases that hold that an extra-judicial statement is hearsay when offered to prove the truth of a matter impliedly, but not expressly, asserted (sometimes referred to as an "implied assertion"). *See* 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8.25, at 4-5 & nns. 18-23 (4th ed. 2023) (collecting cases).

In *United States v. Reynolds*, 715 F.2d 99 (3d Cir. 1983) the Court held that the testimony of a Postal Inspector, that he overheard a co-defendant state to the defendant, "I didn't tell them anything about you," was inadmissible hearsay because "the government offers it to prove the truth of the assumed fact of defendant's guilt implied by its content." *Id*. at 103. Judge Higginbotham rejected the argument that the statement was not hearsay because it was not offered to prove the truth of the matter asserted, explaining that the statement was hearsay because it "was not offered for the purpose of proving its express meaning – that [co-defendant] did not say anything about [defendant]. Rather, it was offered for the implied assertion that [defendant] was involved in the crimes for which the two were charged and tried." *Id*. at 104.

*Reynolds* relied on two Supreme Court cases to support its holding. The statement in *Dutton v. Evans*, 400 U.S. 74 (1970) was, "If it hadn't been for that dirty … Alex Evans [petitioner], we wouldn't be in this now." The *Reynolds* Court stated, "*Dutton* is a clear instance of the Supreme Court recognizing that a statement's implied assertion can constitute hearsay." 715 F.2d at 104. The statement in *Krulewitch v. United States*, 336 U.S. 440 (1949) was, "It would be better for us two girls to take the blame than Kay (the defendant) because he couldn't stand . . . to take it." *Reynolds* distilled the holding as "the Court held that the statement was inadmissible because of the implied assertion of defendant's guilt that it contained," and concluded that "the statement here, like those in *Dutton* and *Krulewitch*, constitutes hearsay because it was introduced to prove its implied assertion of [defendant's] guilt." 715 F.2d at 104.

8

The Mueller & Kirkpatrick evidence treatise observes, with respect to *Reynolds*, that "The court accepted the notion that a statement reveals thoughts that the declarant *does not intend to assert*, and its use of the term 'imply' indicates simply that the statement tends to prove the point, not that *the speaker* intended to assert the point.  The conclusion is that the statement is hearsay anyway."  4 Mueller & Kirkpatrick, *supra*, § 8.25, at 5 (emphasis in original).

In *United States v. Pacelli*, 491 F.2d 1108 (2d Cir. 1974) the Court held that a witness's recounting of statements of defendant Pacelli's wife and others were "inadmissible extra-judicial implied assertions" since the "purpose of the evidence was to get before the jury the fact that various persons other than Lipsky, who had been closely associated with Pacelli, believed Pacelli to be guilty of having murdered Parks."  *Id.* at 1115-16; *see id.* at 1116-17 (*Krulewitch* "held that permitting the testimony was reversible error since it introduced an extra-judicial statement which 'plainly implied that petitioner was guilty of the crime for which he was on trial'").

In *United States v. Melia*, 691 F.2d 672 (4th Cir. 1982) a prosecution of Melia for acting as a "fence" for stolen property, the Court said, flatly, that a witness's testimony, that the witness overheard an accomplice say that the accomplice "felt that the best thing would be to take it up to Connecticut . . . to see what price they could get from Mr. Melia or Mr. Melia's contact up there," *id.* at 675, was "objectionable hearsay" and "critical hearsay testimony," *id.* at 677.

The Mueller and Kirkpatrick evidence treatise cites *Melia* and *Lyle* for the following:

> Finally, it is worth noting that sometimes the truth of what the declarant asserts is crucial to the suggested inference, and this fact seems salient where a person describes her hopes or wishes and the statement supports an inference about unmentioned points only insofar as it is correct in what it actually says. If, for example, someone says "we can sell this stolen painting to Joe," the statement tends to prove that Joe buys stolen art only if the statement is right in what it asserts—that the speaker and his companion really can sell the painting to Joe. In such cases, the statement really is being offered to prove the truth of what it asserts, and hearsay treatment is warranted. 23

23 Fourth Circuit: *U.S. v. Melia*, 691 F.2d 672, 675–677 (4th Cir. 1982) (F's statement that he and M took stolen jewelry to defendant to "see what price they could get" was hearsay because it invited inference that defendant was a fence).

 Sixth Circuit: *Lyle v. Koehler*, 720 F.2d 426 (6th Cir. 1983) (statements by co-offender asking friends to give false alibi testimony were hearsay; inference to guilty mind was not "severable" from "raw statements").

4 Mueller & Kirkpatrick, *supra*, § 8.25, at 5 & n. 23; *see also id*. at 4-5 & nns. 18-23 (citing

*Melia*, *Lyle*, *Reynolds*, *Dutton* and *Krulewitch*).

 Cross-examination of Mitchell to clear up the ambiguity in what he meant by kickback is

essential.  Was it *quid pro quo* per *Jennings*, or something else?  Without cross-examination,

from Mitchell's hearsay statement, the jury will be asked to infer Mitchell's "guilty mind," and

to extend that inference "to the substantive guilt of" Kacher.  *Lyle*, 720 F.2d at 434.  Clever

phrasing of questions cannot change that it is inadmissible hearsay. *United States v. Kizzee*, 877

F.3d 650, 657 (5th Cir. 2017) (testimony allowing fact finder to infer content of statement made

to him -even without revealing content of the statement- is hearsay, if offered to establish guilt).[3]

 The government cites cases holding a false exculpatory statement not offered for the truth

is not hearsay, Gov't Resp. at 15-16, but none of them involve or address an implied assertion.

---

[3] Mitchell's statement to FBI agents who were interrogating him is "testimonial."  *Crawford v. Washington*, 541 U.S. 36, 52 (2004).  *Crawford* also noted: "The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id*. at 59 n. 9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).  In *Street*, defendant claimed his confession was coerced -that the sheriff had read from co-defendant's statement and directed him to say the same thing.  *Id*. at 411.  Co-defendant's confession was then introduced "for the legitimate, nonhearsay purpose of rebutting respondent's testimony that his own confession was a coerced 'copy'"  *Id*. at 417. The Court upheld admission for rebuttal, adding a caveat: "If the jury had been asked to infer that Peele's confession proved that respondent participated in the murder, then the evidence would have been hearsay; and because Peele was not available for cross-examination, Confrontation Clause concerns would have been implicated."  *Id*. at 414.  *Crawford* and *Street* are fully consonant with cases such as those collected in the Mueller and Kirkpatrick treatise which hold that a statement offered to prove the truth of an implied assertion is hearsay.

The government cites *United States v. Candoli*, 870 F.2d 496 (9th Cir. 1989), but there, the district court admitted a false exculpatory statement of co-defendant Vultchev and false exculpatory statement of fugitive defendant Kostov.  In each instance, the district court limited the admission of the statement to the government's proof concerning Vultchev.  *Id*. at 507-08.  *Candoli* does not discuss implied assertion.  The only plausible explanation why a limiting instruction was given is that the court recognized that the statement was hearsay as to Candoli.

The government also cites *United States v. Simmons*, 470 F.3d 1115 (5th Cir. 2006), but that was a single defendant case involving admission of defendant's own prior testimony.  479 F.3d at 1124-25.  No hearsay or implied assertion issue was involved.

As to *Anderson v. United States*, 417 U.S. 211 (1974), *Lyle* addressed its inapplicability directly.  *Lyle*, 720 F.2d at 433 n. 11.  In *Anderson*, which involved vote fraud, the Court held that a transcript of prior testimony of Tomblin, in which he testified (falsely) that he saw a particular voter at the precinct to vote, was not hearsay as it was offered as a false exculpatory statement, and not for its truth.  417 U.S. at 216, 221.  The *Lyle* Court noted that *Anderson* didn't present an analogous situation, reasoning that "the prosecution's purpose in introducing evidence is highly pertinent to the proper classification of the evidence as hearsay or not hearsay," *Lyle*, 720 F.2d at 433 n. 11.  The Court noted that in *Anderson*, "the precise substance of the perjured statements was inconsequential," whereas in the case before it, "the prosecution sought to have the jury infer the defendants' guilt directly from the substantive message embodied in the letters themselves."  *Id*.;[4] *see* Park, I Didn't Tell Them Anything About You: Implied Assertions as Hearsay under the Federal Rules of Evidence, 74 Minn. L. Rev.783, 815 (1990) (precedential

---

[4] We acknowledge that the dissent in *Lyle* had a different view of the applicability of *Anderson*.  *Lyle*, 720 F.2d at 437 (Porter, Senior U.S. District Judge, dissenting).

value of *Anderson* "diminished" by obscure way Court stated facts and by Court's apparent belief that statement's use "involved no reliance on credibility and no need for cross-examination.")

The government also sought to distinguish *Lyle* by including a cryptic parenthetical quote from a state court case which says that "a majority of other courts do not follow [*Lyle*]."  Gov't Resp. at 16.  But as we explain below, it was not *Lyle*'s hearsay holding, but a different issue entirely, on which "a majority of other courts" did not follow *Lyle*.

Prior to 1987, the Sixth Circuit followed a minority rule, that in applying *Bruton*, a court may look beyond the face of the statement to determine if it incriminates.  *Marsh v. Richardson*, 781 F.2d 1201, 1210 (6th Cir. 1986) ("Other circuits have generally disapproved of looking beyond the face of the contested extrajudicial statement in determining its incriminatory value, labeling such practice as contextual implication or evidentiary linkage.")  On review of *Marsh*, the Supreme Court reversed, and adopted the majority rule.  *Richardson v. Marsh*, 481 U.S. 200, 208, 211 (1987) (where statement is not incriminating on its face, admission with a limiting instruction and redactions to eliminate reference to defendant's existence comports with *Bruton*).

*Marsh* was cited in *In re Theders*, 123 P.3d 489 ¶ 24 & n. 15 (Ct. App. Wash. 2005), but as noted, *Marsh* discusses the circuit split over whether, in applying *Bruton*, a court may look beyond the face of the statement.  Nowhere in *Marsh* is there a discussion, or even mention, of an implied assertion issue.

> 5.   Mitchell's Statement to FBI Agents Was An Act of Concealment Made To Cover Up, And Was Not Made During And In Furtherance Of, Any Conspiracy

The government argues that "Mitchell's statement to the FBI was a non-testimonial statement by a co-conspirator in furtherance of the bribery conspiracy and does not raise Confrontation Clause issues."  Gov't Resp. at 14.  Kacher acknowledges that a statement of a co-conspirator made "during and in furtherance of" a conspiracy is "not testimonial."  *Crawford*,

541 U.S. at 56.  Here, however, Mitchell's false exculpatory statement was an act of concealment made to cover up a crime, which does not "extend ... the time within which hearsay declarations will bind co-conspirators."  *Grunewald v. United States*, 353 U.S. 391, 401-02 (1957).

Indictment ¶ 35 reads: "To further conceal the payments Mitchell received from Kacher and BAU, Mitchell falsely represented to special agents with the Federal Bureau of Investigation ("FBI") that the payments were not kickback payments."

Indictment ¶ 35 gives no date for the statement, however, the FBI 302 of Mitchell's interview shows he made the statement on December 18, 2018.  Mitchell also told FBI agents he "could not recall what the payments were for" and couldn't remember if he had loaned money to Kacher.  But on the same day Mitchell told an FBI agent this may have been a loan, Kacher was telling a different FBI agent that he "'100% felt pressured' to give in to Mitchell's requests for money.  These were not loans."  FBI 302 December 18, 2014 Interview of Wayne Kacher.

Indictment ¶¶ 30-34 identify the conspiracy's object, its manner and means, and dates and descriptions of overt and other acts committed during and in furtherance of it.  All such acts for which dates are provided fall between June 30, 2014 and May 26, 2017.  Mitchell's statement was thus made more than eighteen months after the last alleged overt act.

As has been pointed out, "a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up the crime." *United States v. Wilson*, 624 F.3d 640, 656 n. 18 (4th Cir. 2010) (quoting *Grunewald v. United States*, 353 U.S. 391 (1957)).  The latter "demonstrates 'nothing more than that the conspirators do not wish to be apprehended,' and are not actions done in furtherance of the conspiracy." *Wilson*, 624 F.3d at 656 n. 18 (quoting *Grunewald*); *see also Dutton v Evans*, 400

US 74, 81 (1970) ("It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise."); *see Krulewitch v. United States*, 336 U.S. 440, 443-44 (1949) (rejecting argument that "an implicit subsidiary phase of the conspiracy always survives, the phase which has concealment as its sole objective").

In *Grunewald v. United States*, 353 U.S. 391 (1957) "the indictment alleged . . . that the conspiracy also included as a subsidiary element an agreement to conceal the conspiracy [so that] conspirators would escape detection and punishment for their crime." *Id*. at 398.  The Court rejected that allegations in the indictment of concealment extended the limitations period:

> The crucial teaching of *Krulewitch* and *Lutwak* is that, after the central criminal purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret, and that the conspirators took care to cover up their crime in order to escape detection and punishment. . . . [Such a rule] would extend the life of a conspiracy indefinitely. . . . [E]very conspiracy will inevitably be followed by actions taken to cover the conspirators' traces. Sanctioning the Government's theory would, for all practical purposes, wipe out the statute of limitations in conspiracy cases, **as well as extend indefinitely the time within which hearsay declarations will bind co-conspirators**.

*Id*. at 401-02 (emphasis added).  The Court ruled that the conspiracy was not extended by evidence of secrecy and "desperate attempts to cover up after the crime begins to come to light, " including that "Patullo's accountant was persuaded to lie to the grand jury concerning a check made out to an associate of the conspirators," *id*. at 403.

Here May 26, 2017 is the last date of an overt act alleged in the indictment.  Just as lying to the grand jury did not extend the conspiracy in *Grunewald*, so too, Mitchell's lying to FBI agents more than 18 months after the last overt act did not extend any conspiracy here,

particularly since Kacher affirmatively admitted "These were not loans."  Since Mitchell's statement is, at most, an act of concealment after the objects of any conspiracy had been attained, it is not admissible as a co-conspirator statement, and should be stricken from Indictment ¶ 35.

6.     Mitchell's False Exculpatory Statement, On Its Face, Implicates Kacher, And Under *Bruton*, Is Not Admissible In A Joint Mitchell/Kacher Trial, Even With A Limiting Instruction

The government argues that Mitchell's statement "does not run afoul of *Bruton*" because it does not "clearly implicate" Kacher and is not "facially incriminating." Gov't Resp. at 16. While this is the correct test, the government is wrong in its application.  The FBI 302 reads:

> SA Goshen showed Mitchell **a series of check payments made from Kacher** to Mitchell.  The payments consisted of **cashier's checks made payable to Kacher**, which were then endorsed **in the name of Kacher**, **signed over to Mitchell**, and deposited into Mitchell's personal bank account.  SA Goshen also showed Mitchell checks written fr om MDBC to BAU that were dated the same day or the day prior to the cashier check deposits made into Mitchell's personal account.  **After seeing the checks and deposits, Mitchell stated the payments were "Not a kickback.  I don't take kickback money."** Neither SA Goshen nor SA Volp mentioned the word "kickback" to Mitchell.  Mitchell could not recall what the payments were for and stated he could not remember if he had loaned money to Kacher in relation to the payments.  Mitchell informed SA Goshen he would check through his receipts in an attempt to determine what the payments were for.

Mitchell's statement on its face is incriminating. The "payments" that "were not a kickback" "consisted of cashier's checks" dated in 2014 that were "payable to Kacher,"  then "endorsed in the name of Kacher" and "signed over to Mitchell."  FBI 302 December 18, 2018. That Mitchell blurted out that the payments were "not a kickback," when neither SA Goshen nor SA Volpe had used that word, invites an inference that Mitchell believed the payments from Kacher were a kickback.  This directly implicates Kacher.  Clever phrasing of questions cannot avoid this.  *See Kizzee*, 877 F.3d at 658 (prosecutor's questions "may trigger the Confrontation Clause by revealing to the jury that a nontestifying witness conveyed incriminating information")

The government cites *United States v. Hernandez*, 588 F.Supp. 3d 690 (W.D.Va. 2022). There, five MS-13 members were charged with a prison murder of a rival gang member.  The court held statements made to an investigator by two co-defendants were barred by *Bruton*.   In a statement by Chavez, he said: "We have tried to fix the disrespect issues from [murder victim] Zaragoza but no one wanted to hear it and didn't want to change so we fixed it. We have crossed a line that can't go back. We know what we did, this is how it needed to be."  *Id*. at 697.  The Court said "On its face, this statement 'powerfully incriminate[es]' defendant." *Id*. (quoting *Bruton*, 391 U.S. at 135).  Although the statement did not mention Hernandez by name, the Court noted a reasonable inference from use of "we" that it referred to him:

> Chavez explicitly refers to the victim by name, expressing animosity towards him. The statement also relates directly to the stabbing incident. It is reasonable to infer then that the "we" refers specifically to the codefendants, including Hernandez, and not generally to any number of individuals, who may or may not be charged.

*Id*. at 697.  The Court explained that "we" was not a "benign pronoun" permissible under *Bruton*, and that the statement was "sufficiently incriminating on its face to warrant exclusion," stating:

> I disagree with the government that the "we" in this context is simply a benign pronoun. This may be true in isolation. But its use in the sentence, along with "Zaragoza" and the mentioning of a violent or intentional act, like "fixed it," renders the entirety of the statement facially incriminating. In *Gray* [*v. Maryland*, 523 U.S. 185 (1998)], the Court expressly carved out a narrow exception from Richardson's broader rule describing which statements are facially incriminating. A pronoun can be more than inferentially incriminating if it obviously refers to a particular individual or group of individuals.

> The facts of this case present such an exception. Even if this statement were the first item introduced at trial, any reasonable juror who wonders who the "we" refers to could simply look over to Hernandez, and other codefendants, "sitting at counsel table[,] to find what will seem the obvious answer." *Gray*, 523 U.S. at 193. To be sure, the incriminating inference will become stronger when considered with other evidence at trial, namely the video, but that is true in every case. It does not change the fact that the statement is sufficiently incriminating on its face to warrant exclusion.

*Id*. at 697; *see also id*. at 698 (statements of co-defendant Almonte were inadmissible under *Bruton* because use of "us" may lead to "impermissible inference that *Gray* prohibits.")

The government says *Bruton* is inapplicable as "Mitchell's statement is not a confession that implicates himself and Kacher; his statement is a denial." Gov't Resp. at 16. That is wrong.

Courts have examined false exculpatory statements to determine whether their admission violated *Bruton*. *See United States v Rashid*, 383 F.3d 769, 776 (8th Cir. 2004) (applying *Bruton*-co-defendant's false exculpatory statement did not implicate defendant in wrong-doing); *United States v. Tropiano*, 418 F.2d 1069, 1080-81 (2d Cir. 1969) (applying *Bruton*-false exculpatory statement contained no accusation against defendant and were not offered for that purpose). *Bruton* applies to statements, not just confessions. *United States v. Campbell*, 935 F.2d 39, 43 (4th Cir. 1991) (*Bruton* violated "when a non-testifying co-defendant's **statement** which inculpates the accused is admitted into evidence" at joint trial); *see id.* at 43 (admission of co-defendant's post-arrest spontaneous statement that 'just because I am staying at Kena's place doesn't mean I am dealing crack" dose not violate *Bruton* because "Standing alone," statement did not incriminate defendant); *see* Fed. R. Crim. P. 14, 1996 Notes of Advisory Committee (defendant may be prejudiced by admission of co-defendant *statement* or confession).[5]

---

[5] Kacher expects to raise issues *in limine*, *see United States v. Wall*, Crim. No. SAG-19-0500 (D. Md. 2022), and by Rule 29 motion. We will seek to exclude Mitchell's statement (a) for lack of foundation, *see United States v. Bailey*, 743 F.3d 322, 345 (2d Cir. 2014) (before jury may consider disclaimers as false exculpatory statements, government "effectively had to prove" guilt); (b) as "general denials of guilt later contradicted" are not exculpatory statements, *United States v. McDougald*, 650 F.2d 532, 533 (4th Cir. 1981), and (c) under Fed. R. Evid. 403, *see United States v. Bhimani*, 492 F. Supp. 3d 376, 383 n.3 (M.D. Pa. 2020). We will ask the Court to preclude testimony using the word "kickback," *see United States v. Vega*, 813 F.3d 386, 393, 394 (1st Cir. 2016) (error to permit witnesses to testify payments "were kickbacks"). Anticipating failures of proof, we will move for judgments of acquittal on § 666 counts, *e.g., United States v. Pinson*, 860 F.3d 152, 167 (4th Cir. 2017) (payments for compensation or reimbursement not "benefits" under Section §666(b)); and on wire fraud counts, *e.g*., *Percoco v. United States*, 598 U.S. __ (May 11, 2023) (§ 1346 does not extend a duty to the public to all private persons); *Ciminelli v. United States*, 598 U.S. __ (May 11, 2023) (scheme to deprive victim of information not cognizable under § 1346); *United States v. McGeehan*, 584 F.3d 560, 572 (3d Cir. 2009) (duty of honest services did not extend to breach of non-fiduciary contract duty), *vacated on*

7.      Correction of Citation Error in Kacher's Opening Memorandum (ECF 59, p. 23)

In Kacher's Memorandum, ECF 59, at page 23, the wrong case is cited.  The quote is from *United States v. Montour*, 944 F.2d 1019, 1026 (2d Cir. 1991), not *United States v. Poore*.

8.      Kacher Is Aggrieved As The Government Has Imaged But Won't Return Devices

In opposing Kacher's Rule 41(g) motion, the government applies the wrong standard. Kacher is "aggrieved" under the rule because his property was seized four years ago, imaged, but not returned.  Counsel's difficulty reviewing the discovery was the impetus for the motion, but Kacher is "aggrieved" because, although the original devices are no longer needed, they were not returned. *See also* Pericak 06/06/2023 Affidavit (noting disk duplication error in imaged copy).

One is "aggrieved" when computers are seized, imaged, and not returned.  *In Re Grand Jury Subpoena Duces Tecum Issued To Roe & Roe*, 49 F.Supp.2d 451, 453 (D. Md. 1999) (person from whom property is seized is presumed to have right to its return; "the government has the burden of demonstrating that it has a legitimate reason to not return the property").

*accord United States v. Gossjankowski*, Crim. No. 21-0123 (PLF) (D.D.C. Feb. 1, 2023).

---

*other grounds*, 625 F.3d 159 (3d Cir. 2010); *United States v. Vinyard*, 266 F.3d 320, 327-28 (4th Cir. 2001) (private sector honest services fraud requires proof of reasonably foreseeable economic harm to employer); *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006) (whether defendant, "as part of a kickback scheme, contemplated harming the contractors," answered no, where contractors "received all they bargained for"); *United States v. Davis*, No. 13-cr-923 (LAP) (S.D.N.Y. 2017) (since contracts "were lump-sum contracts" and "contract prices were fixed," "it would have been impossible for" any "allegedly improper payments" "to expose the Port Authority to actual or potential pecuniary harm on these contracts"); *United States v. Evans*, Crim. No. 2:14-cr-113 (S.D.W.Va. 2015) (no violation where person was not employee of, and owed no fiduciary duty to, entity deprived of honest services); *Parr v. United States*, 363 U.S. 370, 389 (1960) (mailings not for purpose of executing scheme even though defendant "planned to steal an indefinite part of the receipts"); *United States v. Dick*, 744 F.2d 546, 551-52 (7th Cir. 1984) (mailing scheduling work for subcontractor to perform so he could be paid was not for purpose of executing scheme); *United States v. Knippenberg*, 502 F.2d 1056, 1059-60 (7th Cir. 1974) (mail fraud conviction reversed where there was no evidence that defendant knowingly participated in scheme prior to the charged mailing).

9.      Counter-Proposal to Government's Trial Proposal-Trial Of Kacher Alone To Start On October 2, 2023 Or As Soon Thereafter As Schedules Permit

After considering the government proposal, and Mitchell's request to delay trial to 2024, and in the interest of efficiency, minimization of juror confusion, and speedy trial, Kacher asks for severance, and that Kacher alone be tried on Counts 1, 3-7 and 15-20 (all counts in which Kacher is charged), to start on October 2, 2023 or as soon thereafter as schedules permit.

1.      A trial of Kacher alone will have fewer witnesses, fewer exhibits, fewer side bars to make a record to preserve objections, fewer limiting instructions, fewer issues on which the jury must deliberate, fewer chances for the jury to become confused, and fewer appellate issues.

2.      In a trial of Kacher alone, the jury can be laser focused.  The government must show a *quid pro quo* after January 13, 2015.  *United States v. Silver*, 948 F.3d 538, 569 (2d Cir. 2020).  As the government acknowledges, "There is no dispute that Kacher made the payments . . .  The jury must determine if these payments were corrupt bribe payments or just tokens of friendship."  Gov't Resp. at 12.  Kacher's intent in making the payments "is determinative of whether a crime occurred."  *See United States v. Jennings*, 160 F.3d 1006, 1017 (4th Cir. 1998) ("intent of the payor, not the intent of the payee, is determinative of whether a crime occurred").

3.      In a trial of Kacher alone, the jury will not need to tackle the conundrum that Mitchell may be found guilty of conspiring with Kacher based on 2014 overt acts, but Kacher may not be found guilty of conspiring with Mitchell based on the same acts.  In a Mitchell/ Kacher joint trial, since "it takes two to tango," it will be challenging to draft an instruction that the Court and parties can feel assured a lay jury will be able to follow (and will in fact follow).

4.      In a Mitchell/Kacher joint trial, when the government offers evidence of Mitchell's 600 embezzlement transactions, *see* Gov't Resp. at 6, the Court will be required to determine, under Rules 403 and 404(b), whether to exclude the evidence altogether, or to limit

19

the presentation, so as to address the risk of the jury finding Kacher "guilty by association." *See United States v. Satterfield*, 548 F.2d 1341, 1346 (9th Cir. 1977).

5.     In a Mitchell/Kacher joint trial, the Court will be required to assess whether Kacher's oral statement can be redacted. *See United States v. Lighty*, 616 F.3d 321, 350 (4th Cir.2010) ("redactions are permissible so long as the redaction does not distort the statements' meaning, exclude substantially exculpatory information, or change the tenor of the utterance as a whole") (citation omitted); *Howard v. Moore*, 131 F.3d 399, 415-18 (4th Cir. 1997) (en banc) (applying *Bruton*, excluding only portions of confession that inculpated co-defendant and did not exculpate defendant); *United States v. Wenzel*, 311 F.2d 164, 168 (4th Cir. 1962) ("when a confession is introduced it is the defendant's right that all, and not just a part of it, be produced").

### Conclusion (including request for a hearing)

Kacher requests that the Court grant his motion for severance of Counts 2, 8 and so much of Count 1 as charges a conspiracy furthered by overt acts committed in 2014, and to strike ¶ 35 and ¶ 36a-f.  Also, in the interest of efficiency, conservation of resources, minimization of juror confusion, and a speedy trial, Kacher asks the Court to order a trial of Kacher alone, to start on October 2, 2023, or as soon thereafter as schedules permit.  (The government opposes this request.)

Pursuant to Local Rule 105.6, Kacher requests a hearing on his motions.

June 6, 2023                                  Respectfully Submitted

William C. Pericak
PericakLaw PLLC
1101 Connecticut Ave. NW Suite 450
Washington, D.C. 20036
wpericak@pericaklaw.com
202 607-5769  Bar ID: 22333